NOT PRECEDENTIAL                                (Document No. 7)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                          :
EDDY VERAS, on behalf of himself          :
and all others similarly situated         :
                                          :
                          Plaintiffs,     :
                                          :
            v.                            :     Civil No. 13-1745 (RBK/JS)
                                          :
LVNV FUNDING, LLC                         :     **OPINION**
MRS BPO, LLC, doing business as           :
MRS Associates,                           :
                                          :
                          Defendants,     :
_____         :

**KUGLER**, United States District Judge:

        This matter comes before the Court on the joint motion of Defendants LVNV Funding,

LLC ("LVNV"), and MRS BPO, LLC d/b/a MRS Associates ("MRS"), (collectively,

"Defendants"), to dismiss Plaintiff Eddy Veras' Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  For the reasons stated below, Defendants' motion will be **GRANTED IN**

**PART** and **DENIED IN PART**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

        Plaintiff obtained a credit card from HSBC Retail Services ("HSBC") in December 2008.

(Compl. Ex. B.[1])  When HSBC closed Plaintiff's account in approximately November 2010,

Plaintiff's outstanding balance was $1,404.00.  (Id. ¶ 21, Ex. B.)

---

[1] Plaintiff's credit report is properly considered by the Court in resolving Defendants' motion to dismiss.  See
Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to
dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint
and matters of public record") (emphasis added).

On or about March 20, 2012, MRS sent Plaintiff a letter (the "March 2012 Letter") claiming that LVNV "purchased" Plaintiff's account from HSBC and, as of that date, the outstanding account balance was $1,796.48.[2]  (Id. ¶¶ 19-20, Ex. A.)  The letter also stated that "[b]ecause interest may vary from day to day, the amount due on the day you pay may be greater."  (Id. Ex. A.)

On March 20, 2013, exactly one year after the March 2012 Letter was sent to Plaintiff, he filed suit against Defendants "on behalf of himself and all consumers and their successors in interest, who have received debt collection letters and/or notices from MRS on behalf of LVNV which are in violation of the FDCPA."  (Id. ¶ 40.)  Plaintiff also alleged that Defendants violated the New Jersey Licensed Lenders Act ("NJLLA"), which was amended and renamed the New Jersey Consumer Finance Licensing Act ("NJCFLA") in 2009.[3]  Defendants filed their joint motion to dismiss on July 19, 2013, (Defs.' Br., Doc. No. 7.)  Plaintiff filed his opposition on September 3, 2013, (Pl.'s Opp'n Br., Doc. No. 10), and Defendants filed their reply on September 30, 2013, (Defs.' Reply Br., Doc. No. 12).

As Defendants' motion has been fully briefed, the Court now turns to the parties' arguments.

## II.   DISCUSSION & ANALYSIS

### A.  Legal Standard on a Motion to Dismiss

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts

---

[2] There is some inconsistency as to who originated Plaintiff's loan.  Exhibit A to Plaintiff's Complaint identifies HSBC Bank Nevada National Association as the originator of the loan at issue, but Exhibit B refers to HSBC Retail Services.  This contradiction, however, is not relevant for purposes of resolving the instant motion.

[3] Plaintiff cites to the NJLLA, rather than the NJCFLA, throughout his Complaint.  As this distinction is immaterial for purposes of resolving the instant motion, the Court will refer to the statute's proper name throughout its opinion.

accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Also, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

**B. Violations of the FDCPA**

In Count I, Plaintiff alleges that both LVNV and MRS violated sections 1692e(2), 1692e(10), and 1692f(1) of the FDCPA.  Sections 1692e(2) and 1692e(10) prohibit debt collectors from making false or misleading representations in connection with the collection of any debt.  Comparatively, Section 1692f addresses unfair practices.

1. <u>Whether LVNV is a "Debt Collector" as defined by the FDCPA</u>

Because the FDCPA prohibits conduct by "debt collectors," but not by "creditors," the Court must first address Defendants' argument that LVNV is not a debt collector, and thus cannot be held liable under the FDCPA.[4]  (Defs.' Br. 5-7.)

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  A "debt collector" does not include, however, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  <u>Id.</u> § 1692a(6)(F)(iii).

By comparison, a creditor is one who "offers or extends to offer credit creating a debt or to whom a debt is owed."  <u>Id.</u> § 1692a(4).  "Creditors—as opposed to 'debt collectors'— generally are not subject to the FDCPA."  <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 403 (3d Cir. 2000) (internal citations omitted).  The FDCPA excludes from its definition of "creditor," however, those persons who "receive[] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

---

[4] Defendants do not dispute MRS's designation as a debt collector.

The terms "creditor" and "debt collector" are mutually exclusive under the Act.  See F.T.C. v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007).  Thus, courts have focused their inquiry on the status of the debt at the time it was acquired in order determine how a person should be defined.  Id.  Illustratively, "[i]f the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt.  On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector."  Id. (quoting Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003) (internal quotation marks omitted)).

In his Complaint, Plaintiff makes the following allegations:

- "Defendant LVNV claims to acquire defaulted consumer debts originally paid to others.  It then attempts to collect them."  (Compl. ¶ 12.)

- "Defendant LVNV uses the mails and telephone system in conducting business."  (Id. ¶ 13.)

- "Defendant LVNV is a 'debt collector' as defined by 15 U.S.C. § 1692a(6)."  (Id. ¶ 15.)

- "MRS has been attempting to collect the alleged loan made to Plaintiff [ ], on behalf of LVNV which claims to have purchased the loan after it became delinquent."  (Id. ¶ 17.)

- Plaintiff's debt originated from HSBC and the March 2012 Letter "claims that LVNV has 'purchased' [Plaintiff's] account."  (Id. ¶¶ 16, 19.)

Further, although the March 2012 Letter appears to be an introductory letter of sorts in that it introduces LVNV as the purchaser of Plaintiff's account, the letter also states that "[r]esolving a long overdue debt is never easy."  (Compl. Ex. A (emphasis added).)

Finally, Plaintiff attaches to his Complaint a copy of his annual credit report in support of his allegation that when HSBC closed his account in November 2010—two years before the March 2012 Letter informing Plaintiff of LVNV's alleged purchase—there was an outstanding balance of $1,404.  (Id. ¶ 21, Ex. B.)

5

At this stage of the proceedings, the Court is satisfied that the above-discussed allegations, combined with the contents of the March 2012 Letter, make it more plausible than not that LVNV purchased Plaintiff's delinquent debt from HSBC and thus is a debt collector, and subject to liability, under the FDCPA.

Having concluded that Plaintiff has sufficiently alleged that LVNV is a debt collector, the Court now turns to merits of Plaintiff's claims under the FDCPA.

2.  Whether the March 2012 Letter Violated Section 1692e of the FDCPA

Defendants argue that Plaintiff has failed to allege how the March 2012 Letter was false, misleading, or deceptive in violation of sections 1692e(2) (hereinafter, "e(2)"), or 1692e(10) (hereinafter, "e(10)"), of the FDCPA, and thus these claims must be dismissed.

In his opposition brief, Plaintiff makes no reference to either e(2) or e(10); instead, he argues that Defendants' conduct violates section 1692e(5), which prohibits threatening "to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).[5]  Specifically, because LVNV purchased Plaintiff's alleged debt without first acquiring the necessary state license to do so, MRS's attempt to collect the alleged debt violates the FDCPA because LVNV was not the lawful owner of the alleged debt.  (Pl.'s Opp'n Br. 8.)[6]  Plaintiff then concludes that MRS also used

---

[5] Although Plaintiff advances an argument under section 1692e(5) in his opposition brief, he does not allege any violation of section 1692e(5) in his Complaint.  Consequently, the Court will not consider Plaintiff's argument under section 1692e(5) in ruling on Defendants' Motion.  See Carpenter v. Wawa, No. 09-2768, 2009 WL 4756258, at *2 (E.D. Pa. Dec. 3, 2009) (holding that because certain allegations were not contained in the plaintiff's Complaint, but rather in his response to the defendant's motion to dismiss, that they would not be considered by the Court in ruling on the defendant's motion).  The Court notes, however, that should Plaintiff later need to amend his Complaint in order to allege a claim under section 1692e(5), he may move to do so.  See Fed. R. Civ. P. 15(b) ("Amendments During and After Trial.  (1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.").

[6] At certain points in Plaintiff's opposition brief, he appears to read into his own allegations.  Illustratively, although he argues in his opposition brief that LVNV is not the lawful owner of his alleged debt, he does not actually allege this fact in his Complaint, but rather alleges that LVNV "is not entitled to payment for any consumer loans" and it is

6

"false and deceptive means to collect the alleged debt [sic] because LVNV added debt in excess of New Jersey usury laws."  (Id.)

Although Plaintiff does not set forth any arguments as to how Defendants' conduct specifically violated sections e(2) or e(10), the Court will still address the merits of these claims. "To do otherwise would dismiss the plaintiff's claims for failure to adhere to a local court rule rather than for failure to state a claim upon which relief could be granted."  Regal-Pinnacle Integrations Indus., Inc. v. Philadelphia Indem. Ins. Co., No. 12-5465, 2013 WL 1737236, at *4 (D.N.J. Apr. 22, 2013) (citing Stackhouse v. Mazurkiewiz, 951 F.2d 29, 30 (3d Cir. 1991)).

Sections e(2) and e(10) prohibit debt collectors from making false or misleading representations in connection with the collection of any debt.  Specifically, e(2) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt," while e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer . . . ."  15 U.S.C. §§ 1692e(2), (10).

"Lender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least-sophisticated debtor."  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008); see also Brown v. Card Serv. Ctr., 464 F.3d 450 (3d Cir. 2006) (applying "least-sophisticated debtor" standard to claims under section 1692e).  This is not a standard of reasonableness, i.e., courts do not inquire whether a particular communication would deceive or mislead a reasonable debtor because "[a] communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor."  Scioli v. Goldman & Warshaw P.C., 651 F. Supp. 2d 273, 280 (D.N.J.

---

"not entitled to charge and collect interest" in violation of New Jersey law.  (Compl. ¶¶ 26-27.)  The Court notes that it relies solely on the allegations in Plaintiff's Complaint, and not on his summary of those allegations, in determining whether he has stated a claim sufficient to survive Defendants' motion under Rule 12(b)(6).

2009).  Thus, "the question is whether the allegedly deceptive communication can be reasonably read [by the least sophisticated debtor] to have two different meanings, one of which is inaccurate."  Id.  This standard does have its limitations; indeed, liability will not be imposed on the basis of "bizarre or idiosyncratic interpretations of communications."  Id.  And "[e]ven the least sophisticated debtor [will be] presumed to have a basic level of understanding and willingness to read with care."  Id.

As briefly discussed above, Plaintiff alleges that the March 2012 Letter violated the FDCPA because it represented that MRS had the right to collect payment on Plaintiff's alleged debt, on LVNV's behalf, when in fact it did not.  (Compl. ¶¶ 43-44.)  Plaintiff bases his claims on Defendants' alleged violation of the NJCFLA.

Defendants argue, however, that the March 2012 Letter merely provided information to Plaintiff and made "no demands, impose[d] no deadlines, nor [made] any threats."  (Defs.' Br. 10.)  Further, the March 2012 Letter "does not assert that LVNV or MRS are licensed [under the NJCFLA] to collect the debt owed by Plaintiff in the state of New Jersey."  (Id.)  Therefore, "pursuant to the least sophisticated consumer standard . . . Plaintiff cannot possibly allege that Defendants violated [section] 1692e of the FDCPA as, on its face, the subject notice is not deceptive, misleading, or otherwise violative of [section] 1692e."  (Id.)

The NJCFLA requires that persons engaged in business as "consumer lenders" obtain certain licenses.  N.J. Stat. Ann. § 17:11C-3.  A "'consumer lender' means a person licensed, or a person who should be licensed, under [§§ 17:11C-1 et seq.] to engage in the consumer loan business."  Id. § 17:11C-2.  Any person "directly or indirectly engaging . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer

loan business." Id.  "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." Id. § 17:11C-3 (emphasis added).

 While it appears that district courts in this state, as well as the Third Circuit, have yet to address the precise issue that is currently before the Court, there have been a number of federal district courts outside of this state that have considered equivalent circumstances; namely, whether a debt collector's failure to obtain a license or register as a debt collector pursuant to a state statute can be a violation of section 1692e.  Certain courts that have considered this issue have held in the affirmative.  See Fiorenzano v LVNV Funding, LLC, No. 11-178M, 2012 WL 2562415, at *4-5 (D.R.I. June 29, 2012) (holding that plaintiff's allegation that LVNV violated section 1692e(10) by failing to register with the State of Rhode Island as a debt collector under the Rhode Island Debt Collector Registration Statute was sufficient to state a claim under the FDCPA where the Rhode Island statute prohibited any person from acting as a debt collector in the state without first registering as such); Russey v. Rankin, 911 F. Supp. 1449, 1459 (D.N.M. 1995) (finding that "Defendant TCA violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and 1692f by engaging in collection activity in [New Mexico] without a license," and granting plaintiff summary judgment on those claims); Gaetano v. Payco of Wis., Inc., 774 F. Supp. 1404, 1414-15 (D. Conn. 1990) (holding that plaintiff was entitled to summary judgment on her section 1692e(10) claim because "the Court finds deceptive the defendant's attempt to collect a debt when prohibited from doing so by Connecticut law").

 Defendants cite to some courts that have held to the contrary.  See Wade v. Reg'l Credit Ass'n, 87 F.3d 1098 (9th Cir. 1996) (holding that "debt collection practices in violation of state law are not per se violations of the FDCPA" and that the defendant's collection activities in

Idaho, where it was not licensed as a debt collector, did not violate sections 1692e(10) or 1692f of the FDCPA; Ferguson v. Credit Mgmt. Control, Inc., 140 F.Supp.2d 1293, 1301-03 (M.D. Fla. 2001) (holding similarly).

In addressing these conflicting holdings, this Court is persuaded by the holdings in Fiorenzano, Russey, and Gaetano in that the legislative intent behind the FDCPA is to reign in the illegal activities that Congress found were pervasive in the debt collection industry.  See Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 367 (3d Cir. 2011) ("The FDCPA is a remedial statute, and we construe its language broadly so as to effect its purposes.").  The holdings of Fiorenzano, Russey, and Gaetano better uphold this legislative intent, which this Court will follow.

Further, it would strain logic to conclude that if a debt collector is prohibited from engaging in debt collection activity in a state, he avoids the risk of liability under the FDCPA so long as he conceals this fact and does not make any representation that he actually has debt collection authority.  See Nero v. Law Office of Sam Streeter, P.L.L.C., 655 F. Supp. 2d 200, 208-209 (E.D.N.Y. 2009) (stating that "[i]n rejecting the § 1692e(10) claim, the Ninth Circuit in Wade held that there was nothing deceptive about the debt collection letter as it contained no statements by the defendant that it had the authority to file lawsuits in the debtor's state of residence.").   Indeed, the Court finds that this type of outcome would create quite a perverse incentive.[7]

---

[7] "[C]ourts have recognized the futility of a statutory scheme that would provide more protection to debt collectors who violate the law than to those who merely threaten or pretend to do so . . . . The opposite conclusion would be akin to attaching liability to one who merely threatens a tortious act while absolving one who unabashedly completes it. It is safe to say that such an interpretation veers sharply from the legislative purpose behind the FDCPA."  Sprinkle v. SB & C Ltd., 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006)); see also Marchant v. U.S. Collections West, Inc., 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998) ("defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority . . . would defy the very purpose of the section.").

Although Defendants have relied on Wade in arguing that the March 2012 Letter is "not deceptive, misleading, or otherwise violative of [section] 1692e," the Court declines to follow that holding.  However, even if it did, it would "not mandate dismissal of this action at the motion to dismiss stage."  See Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1361 (S.D. Fla. 2000) (discussing Wade and declining to grant defendant's motion to dismiss regardless of whether it followed the holding in Wade or not).

As discussed above, the NJCFLA prohibits any person from engaging in the consumer loan business who has not yet obtained a license from the Department of Banking and Insurance. N.J. Stat. Ann. §§ 17:11C-2, C-3.  Accordingly, MRS's attempt to collect Plaintiff's alleged debt on behalf of LVNV, who was not licensed as a consumer lender under the NJCFLA, constitutes prohibited conduct under the NJCFLA.  The Court acknowledges that "while it may be true that the FDCPA was not designed to turn every state law debt collection violation into a federal violation," Fiorenzano, 2012 WL 2562415, at *5, Plaintiff's allegation that Defendants attempted to collect Plaintiff's debt in contravention of the NJCFLA is sufficient to at least support his claim under section 1692e(10), that Defendants used a false representation or deceptive means to collect or attempt to collect Plaintiff's debt.  See 15 U.S.C. § 1692e(10).[8]

Accordingly, Defendants' motion will be denied as to this claim.

---

[8] Because the Court finds that Plaintiff has sufficiently alleged a violation under section 1692e(10), it need not consider whether Plaintiff has also sufficiently pled a claim under section 1692e(2).  Cf. Chulsky v. Hudson Law Offices, P.C., 777 F. Supp. 2d 823, 831-32 (D.N.J. 2011) (quoting Gervais v. Riddle & Assocs., P.C., 479 F. Supp. 2d 270, 276-77 (D. Conn. 2007) ("'[c]ourts have long held that after finding a valid claim under a more specific subsection of § 1692e . . . further analysis under § 1692e(10) is somewhat duplicative.'")).

3.   <u>Whether Plaintiff Has Stated a Claim under 1692f</u>

Defendants next argue that "Plaintiff fails to classify any action taken by either Defendant as unfair or unconscionable" sufficient to state a cause of action under section 1692f. (Defs.' Br. 11.)  "At no point does Plaintiff allege how any debt referenced in the [March 2012 Letter] was unauthorized by the underlying loan agreement or otherwise not permitted."  (<u>Id.</u>) Further, the March 2012 Letter "expressly states that 'interest will continue to accrue on your account as provided for in your agreement with the original lender.'"  (<u>Id.</u> (quoting Compl. Ex. A).)

15 U.S.C. § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect any debt," and specifically prohibits "[t]he collection of any amount (including interest, fee charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  <u>Id.</u> § 1692f(1).

In his Complaint, Plaintiff alleges as follows:

- "Defendant LVNV has never held a license under authority of the [NJCFLA] authorizing it to make consumer loans, or to buy, discount or endorse notes (loans), or to receive interest greater than permitted by [N.J. Stat. Ann.] § 31:1-1."  (Compl. ¶ 17.)

- "Upon information and good-faith-belief LVNV has charged Plaintiff interest in excess of the limits imposed by [N.J. Stat. Ann.] § 31:1-1.  (<u>Id.</u> ¶ 23.)

- "LVNV is not entitled to payment for any consumer loans."  (<u>Id.</u> ¶ 26.)

- "LVNV is not entitled to charge and collect interest in excess of the limits imposed by [N.J. Stat. Ann.] § 31:1-1."  (<u>Id.</u> ¶ 27.)

- "LVNV  . . . allegedly purchas[ed] [his] Loan and charg[ed] interest in excess of limits imposed by [New Jersey law] without [the] licenses required by the [NJCFLA]."  (<u>Id.</u> ¶ 39.)

Even though the March 2012 Letter indicated that "interest will continue to accrue on your account as provided for in your agreement with the original lender," (Compl. Ex. A), it is

Plaintiff's contention that not only were Defendants prohibited from buying Plaintiff's loan and receiving payment on that loan, they were also prohibited from charging and collecting interest greater than that permitted by state law, which they proceeded to do.  Because Plaintiff challenges the amount sought by Defendants, in addition to their ability to collect that amount, the Court holds that Plaintiff has sufficiently alleged a claim under section 1692f(1).  See Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 369 (3d Cir. 2011) ("If the agreement does not expressly authorize or state law does not permit the amounts sought, [Plaintiff] has stated a viable claim under [section] 1692f(1)"); cf. Chulsky, 777 F. Supp. 2d at 832 (holding that because "Plaintiff's allegations did not challenge the amount sought by defendants; rather, her allegations focus on [defendant's] inability to legally purchase the debt under the PSCA . . . her allegations do not speak to the amount sought, they do not state a claim under § 1692f(1).").

### C.  Violations of the NJCFLA

Finally, in support of his NJCFLA claim, Plaintiff alleges that Defendants violated the Act by allegedly purchasing Plaintiff's loan and then proceeding to charge interest in excess of limits imposed by the Act without first obtaining the requisite licenses.  Defendants argue, among other things, that Plaintiff has failed to allege "what interest rate was improperly charged, and which rate should have been applied," and that he has failed to allege that his loan was a "consumer loan" and thus within the ambit of the Act.  (Defs.' Br. 12.)  The Court will grant Defendants' motion to dismiss this claim, albeit on alternative grounds.

 "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action."  R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 773 A.2d 1132, 1142 (N.J. 2001); see also Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 673 F. Supp. 2d 313, 330 (D.N.J.

2009) ("federal courts are reluctant to innovate a state right of action when the state's own courts have not done so"); <u>Glynn v. Park Tower Apartments, Inc.</u>, 517 A.2d 475, 478 (N.J. Super. Ct. App. Div. 1986) ("A court should [also] be mindful of the 'elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'").

A review of the NJCFLA reveals that the Legislature did not provide for a private right of action in order to enforce the requirements of the Act. Consequently, to determine whether the Act <u>implies</u> a right of action, the Court must consider "whether the plaintiff is 'one of the class for whose especial benefit the statute was enacted;' whether there is any evidence that the Legislature intended to create a private cause of action under the statute; and whether implication of a private cause of action in this case would be 'consistent with the underlying purposes of the legislative scheme.'" <u>Matter of State Comm'n of Investigation</u>, 527 A.2d 851, 854 (N.J. 1987) (quoting <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975)). Although courts give varying weight to each of these factors, "the primary goal" in determining whether a statute implies a right of action "has almost invariably been a search for the underlying legislative intent." <u>R.J. Gaydos</u>, 773 A.2d at 1143 (internal quotation marks and citation omitted); <u>see also</u> <u>Liberty Bell Bank v. Deitsch</u>, No. 08-0993, 2008 WL 4276925, at *3 (D.N.J. Sept. 9, 2008) ("This factor alone, without regard to the others, has been dispositive in recent cases."). Additionally, the New Jersey Supreme Court "has indicated that a court should be especially hesitant in implying a right to a private cause of action against an entity that is subject to such pervasive regulation by a State agency." <u>Castro v. NYT Television</u>, 851 A.2d 88, 94-95 (N.J. Super. Ct. App. Div. 2004) (citing <u>R.J. Gaydos</u>, 773 A.2d at 1148-49 (refusing to recognize implied private cause of action against insurance company in light of "comprehensive regulation" of insurance industry)); <u>see also</u> <u>Campione v.</u>

Adamar of N.J., Inc., 714 A.2d 299, 309 (N.J. 1998) (holding that in light of the "elaborate

regulatory scheme" under which casinos operate, the Court would not imply a cause of action

against casino "when no such cause of action exist[ed] at common law.").

Here, the New Jersey Legislature has "conferred pervasive authority" upon the

Commissioner of Banking and Insurance to regulate the consumer loan business as well as

entities engaged in that business as consumer lenders.  See generally N.J. Stat. Ann. §§ 17:11C-

1-49 et seq.  This authority includes the power to license and regulate consumer lenders, as well

as punish those who violate any provision of the Act.  See id. § 17:11C-18.  Illustratively, section

17:11C-18 provides that

> [t]he commissioner may refuse to issue and may revoke, suspend or refuse to renew a
> license, or impose a penalty pursuant to this act, if the commissioner finds, after notice
> and an opportunity for a hearing in accordance with the "Administrative Procedure Act,"
> . . . and any rules adopted thereunder, that any person, applicant for or holder of the
> license has: (1) Violated any of the provisions of this act or any order, rule or regulation
> made or issued pursuant to this act . . . .

Id. (internal citation removed).  Further,

> [w]henever it appears to the commissioner that any person has engaged, is engaging, or is
> about to engage, in any practice or transaction prohibited by the [NJCFLA], . . . the
> commissioner may, in addition to any other remedy available, bring a summary action in
> a court of competent jurisdiction against the person, and any other person concerned or in
> any way participating in or about to participate in a practice or transaction in violation of
> the [NJCFLA], . . . to enjoin the person from continuing the practice or transaction
> engaged, or from engaging in the practice or transaction, or doing any act in furtherance
> of engaging in the practice or transaction.[] The commissioner may impose a civil penalty
> not exceeding $25,000 on any person for a violation of the [Act].

Id.

In light of the fact that the Legislature has drafted an extensive statutory scheme that

tasks the Commissioner with the sole responsibility of enforcing the requirements of the Act, the

Court concludes "that it would be inappropriate to construe the Act as impliedly authorizing a

private cause of action."  Castro, 851 A.2d 88, 94-95; see also 2B Sutherland Statutory

Construction § 55:3 (7th ed.) (stating that "[s]tatutes are not extended by implication when language is specific and not subject to reasonable doubt[, and] [c]ourts will not indulge implications which in effect are necessarily contrary to or incompatible with the spirit and purpose of an enactment.").

Accordingly, Defendants' motion to dismiss will be granted as to this claim.

### D.  Leave to Amend

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, because the NJCFLA does not contain a private cause of action, granting Plaintiff leave to amend this claim would be futile.  Accordingly, Plaintiff's NJCFLA claim will be dismissed with prejudice.

## III.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  An appropriate order will issue today.


Dated:  3/17/2014                                    s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge